# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RAYMOND C. FOBBS #130215     :     CIVIL ACTION

    :     NUMBER: 11-700-BAJ-SCR

VERSUS

    :     JUDGE JACKSON

DANIEL DAVIS, ET AL.     :     MAGISTRATE RIEDLINGER

STATE OF LOUISIANA
PARISH OF WEST FELICIANA

## AFFIDAVIT

**BEFORE ME,** the undersigned Notary, personally came and appeared:

## DANIEL DAVIS

the undersigned affiant, having first been duly sworn, did depose and state under oath the following:

1.

I have been employed by the Department of Public Safety and Corrections, Louisiana State Penitentiary at Angola, Louisiana (LSP) for 16 years.

2.

I am currently a Corrections Major.

3.

I have reviewed the claims asserted by inmate Raymond Fobbs DOC# 130215 in suit number USM-11-700, wherein he alleges I subjected him to excessive force and failed to protect and/or insure his safety on the Tiger Unit at Camp C on August 21, 2011.

1


STATE'S EXHIBIT
K
Blumberg No. 5138

4.

I was the supervisor of Camp C, which housed approximately 1,100 inmates, on August 21, 2011.

5.

While looking out of the window in the Camp C supervisor's office at approximately 3:00 p.m. on August 21, 2011, I observed plaintiff walk to the Tiger 4 right rear exit door while he was on the Tiger 3/4 yard and masturbate as he looked towards the gate.

6.

Officer Latoya Dennis was at the Tiger Unit gate when I exited the building.

7.

Plaintiff was handcuffed and removed off of the yard.

8.

I returned to my office after plaintiff was escorted to administrative segregation on the Tiger 1 Unit.

9.

I went to the walk after I received a dispatch from John Sanders advising me that he was involved in a confrontation with inmate Fobbs.

10.

Both plaintiff and Sanders went to the Assessment and Treatment Unit ("ATU") after the incident. I rode in the transport vehicle to the ATU with plaintiff.

11.

I contacted the Investigative Services Department and reported the incident.

12.

Plaintiff was written up for violating disciplinary rule no. 21 E, aggravated sex offense (obscenity) due to his behavior on August 21, 2011.

13.

Contrary to the allegations asserted against me in the complaints, I did not subject plaintiff to force, excessive or otherwise, on August 21, 2011. I likewise did not fail to protect and/or insure his safety on the aforementioned date.

The above facts are true and correct to the best of my knowledge, information and belief under penalty of perjury.

_____        _____
WITNESS                                 DANIEL DAVIS

_____
WITNESS

SWORN   TO   AND   SUBSCRIBED   before   me,   this   ___3rd___   day   of

_____December_____ , 2012, at Angola, Louisiana.

_____ # 77912
EX OFFICIO NOTARY  Connie M. Cann
LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS/LSP

3



UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

```
*  *  *  *  *  *  *  *  *  *  *  *  *
                                    *
RAYMOND C. FOBBS           *    CIVIL ACTION
                           *    NO. 11-700
versus                     *
                           *
DANIEL DAVIS, ET AL        *    POLOZOLA/DALBY
                           *
*  *  *  *  *  *  *  *  *  *  *  *  *
```

The testimony of **DANIEL RAY DAVIS**, taken by the plaintiff pursuant to notice and the within stipulation at the Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana, beginning at 10:32 a.m. on October 26, 2012.

Before Mark LaCour, Certified Stenomask Reporter, in and for the State of Louisiana.

Blumberg No. 5138

STATE'S EXHIBIT

K

*ASSOCIATED REPORTERS, INC.*
*Mark LaCour, C.C.R.*
*(225) 216-2036*

<u>**A P P E A R A N C E S**</u>

**FOR THE PLAINTIFF, DANIEL DAVIS:**

    GRODNER LAW FIRM
    Attorneys at Law
    Quail Run Drive, Suite B-1
    Baton Rouge, Louisiana  70808

    BY:  BLAKE S. LEGER, ESQ.

**FOR THE DEFENDANTS, DANIEL DAVIS, ET AL:**

    STATE OF LOUISIANA
    Department of Justice
    Civil Rights Sect., Litigation Div.
    1885 North Third Street
    Baton Rouge, Louisiana  70802

    BY:  STACEY JOHNSON, ESQ.

## C O N T E N T S

**EXAMINATION OF DANIEL DAVIS:**                    PAGE:

By Mr. Leger:                                                    4

By Ms. Johnson:                                                55


\*  \*  \*  \*  \*


Stipulation:                                                    4

Reporter's Page:                                              58

Certification:                                                59


\*  \*  \*  \*  \*


**MARKED EXHIBITS:**                                  PAGE:

Exhibit One:                                                  55



**ASSOCIATED REPORTERS, INC.**
Mark LaCour, C.C.R.
(225) 216-2036



## S T I P U L A T I O N

It is stipulated and agreed by and between all parties that this deposition is hereby being taken pursuant to the Federal Rules of Civil Procedure.

All formalities, including the reading and signing of the transcript by the witness are hereby waived.

All objections, except those as to the form of the question and the responsiveness of the answer are reserved until the deposition is used or sought to be used in evidence.



\* \* \* \* \*

### DANIEL RAY DAVIS

HAVING BEEN FIRST DULY SWORN

TESTIFIED AS FOLLOWS:

## E X A M I N A T I O N

BY MR. LEGER:

Q.    Please state your full name for the record, sir?

A.    Daniel Ray Davis.

Q.    Okay.  And what is your current rank?

A.    Major, Corrections Major.



**ASSOCIATED REPORTERS, INC.**
Mark LaCour, C.C.R.
(225) 216-2036

be testifying in court under oath you're sworn in to tell the truth. So do you know why you're here today just generally?

A.    Generally.

Q.    Okay. My client, Raymond Fobbs, is alleging there was an incident which he's alleging excessive force on I believe August 21st of last year. Are you generally familiar with that incident?

A.    Yes.

Q.    Okay. And this is basically -- this deposition is basically just to gather information for the lawsuit. I'm not trying to trip you up or trick you or anything like that.

A.    Yes, sir.

Q.    All right, you gave me your full name. What is your date of birth, sir?

A.

Q.    Okay. How long have you been a major?

A.    I've been a corrections major for about ten years now.

Q.    How long have you -- how are you employed? Where do you work?

A.     I work at Camp C for LSP.

Q.     Camp C, LSP.  How long have you worked at Louisiana State Penitentiary?

A.     Sixteen years.

Q.     And where did you work immediately before then?

A.     Immediately before that for a demolition company.

Q.     Where is that?

A.     D.H. Griffin of Texas.

Q.     D.H. Griffin.  Where in Texas is that located?

A.     Houston.

Q.     Okay.  How long did you work for them?

A.     Two years.

Q.     Just generally what kind of work did you do at D.H. Griffin?

A.     I was a high burner.

Q.     What is that?

A.     You climb a ladder and basically cut steel.

Q.     Okay.  What caused you to leave D.H. Griffin and come to work for LSP?

A.     Better benefits.

Q.     As far as three training -- the three trainings that you mentioned, the three programs, do they all involve like a physical hands on training or are any of them just --

A.     They walk you through it.

Q.     They walk you through it.  Okay. And do they -- did all three involved training you on the use specifically of the chemical spray?

A.     Chemical agent.

Q.     Chemical agent?

A.     Yes.

Q.     Just to kind of address that quickly.  The chemical agent that was used on Raymond Fobbs on August 21st 2011 can you tell me a little bit about that?  What the specific name of it is?

A.     The -- I was the supervisor of that unit and --

Q.     What unit is that?

A.     Tiger.

Q.     Tiger.

A.     That he was housed on.

Q.     Okay, he was housed in Tiger,

okay.

A.    The chemical agent used was the -- I want to say it was the Freeze Plus P.

Q.    What does that mean, Freeze Plus P?

A.    That's --

Q.    Just the name of it?

A.    The name of it.

Q.    Okay.

A.    I escorted him to the unit and placed him in the shower and then I left the unit.

Q.    Okay.

A.    So --

Q.    Is this pepper spray or a combination of --

A.    Yes, sir.

Q.    -- pepper spray?  Okay.  So this is essentially pepper spray?

A.    Yes, sir.

Q.    And what did they teach you in training as far as when to -- when you can use the --

MS. WRIGHT-JOHNSON:

I'm going to object.  This

Q.    Major.  Okay.  As a major on that day what do your job duties -- they may be the same as today, but what would you say your job duties generally entail?

A.    Supervise the entire camp which is approximately 1100 inmates and 27 employees.  I have to make sure that everything is ran right and oversee the operation of it.

Q.    What was your shift that day? What time did you get to work?

A.    5:15 to 5:30 in the evening.

Q.    Is that like your set shift?

A.    Yes, sir.

Q.    Okay.  So you got to work at 5:15 that day.  Do you remember what day of the week that would have been?

A.    No, sir, not right off.

Q.    What was the first thing you did when you got to work that day?

A.    I held roll call.

Q.    And when did you first have occasion to come into contact with offender Raymond Fobbs on that day?

A.    Raymond Fobbs was on the yard



STATE'S
EXHIBIT
K-1

that day on --

Q.    When you say on the yard, I'm sorry to interrupt you.

A.    Oh, I'm sorry.

Q.    When you say the yard --

A.    Tiger Three and Four yard which is a working cell block yard.  This offender was on the yard and I observed him masturbating to a female officer of mine and --

Q.    Okay.  Where did you -- what time -- what time of day was this?

A.    I don't remember the exact date and time.

Q.    I mean if I said just generally three p.m. --

MS. WRIGHT-JOHNSON:

Can he look at it, Blake?

MR. LEGER:

Yeah, yeah.

BY MR. LEGER:

Q.    Major Davis, I'm handing you I guess this would be titled, Disciplinary Report --

A.    Disciplinary Report, yes.

Q.    -- to reference.  And did you create this report?

A.    Yes.

Q.    Okay.  And sometimes I can't read my own handwriting as well but if you could just actually read and then if you want you can read it to yourself first.  But if you could read that out loud just so it's on the record what this says just kind of from the top to the bottom.

A.    Okay.  Institution LSP.  This is a Louisiana Department of Public Safety and Corrections Disciplinary Report.  Name of Offender, Raymond Fobbs.  His DOC number is 130215.  Date of incident was 8/21/11.  The time of incident was three p.m.  The place of incident was the Tiger yard.  His job assignment was line 19.  His housing assignment was Tiger Four right cell ten.  He was -- the rule he violated was sex offense aggravated obscenity.  That's rule number 21E.  The description of the incident is on the above date and time I, Major Daniel Davis, was in the Camp C Supervisor's office.  I

looked out the window and observed offender Ray Fobbs, 130215, walk to Tiger Four right rear exit door while he was on Tiger Three and Four yard. Offender Fobbs pulled his erect penis out of his shorts and began to masturbate. He was looking towards the Tiger gate -- as he was looking toward the Tiger gate. I exited the education building and Master Sergeant Latoya Dennis was at the Tiger gate and offender was removed from the yard and placed in admin seg. The signature employee is myself, Daniel Davis, Major of Camp C. The date of report is 8/21/11. Time of report 3:30 p.m. The report -- the copy was given to offender by ML which is Mark Lapraire and offender's signature, he refused to sign. Do you want me to go ahead with the court results or?

Q. That's fine. So you were observing you said from the Camp C supervisor office?

A. Yeah, we have a big window in our office that we can view the yard and when he come on the backside of the

building I noticed he was acting suspicious.

Q.    How was he acting suspicious?

A.    He shouldn't have been in that area to start with and he was peeping around the building.  That's when I seen that he had his penis out of his -- out of his pants.

Q.    Who else was in Camp C supervisor's office where you were at the time?

A.    I was.  I was the only one.

Q.    You were the only one in there?

A.    Yes.

Q.    Is that like -- what was the purpose of you being in that office?  Is that just --

A.    That's my office.

Q.    And you can kind of view --

A.    Yes.

Q.    You mentioned where he was.  Why should he have not been there at the time?

A.    Because it's an area where the yard person cannot see real good and that's an off limits area.

Q.    Okay.

A.    Unauthorized area.

Q.    All right.  Was there a card game going on in the yard that you could observe?

A.    Not that I noticed.  I mean they do play cards.  They play basketball out there.  They run rec.  I mean --

Q.    Okay, and not directly --

A.    There's I mean approximately 50 to 70 people to go out on a yard.  So there's quite a few people out --

Q.    At any given time?

A.    Yes.

Q.    Okay.  Were there other officers out on the yard at the time?

A.    There was one officer out.

Q.    Who was that?

A.    I don't recall who it actually was working that yard.

Q.    Would it have been Mayhall?

A.    No, sir.  I don't -- I'm not a hundred percent sure who the officer was because we use different officers every time they go out on the yard.

Q.    Did Office Mark Lapraire or Officer Jamie Savoy participate in any way in handcuffing Raymond Fobbs or -- did they -- I'm sorry.  Did they escort him? Did any of them escort him to the --

A.    No, I personally escorted him to the shower.

Q.    Okay.  What did you -- what did you tell him, if anything, when you first approached him, Raymond Fobbs?

A.    He was denying the fact of -- I mean he was --

Q.    What did you tell him though?

A.    I told him come on.  He's being locked up for a 21.

Q.    You told him, come on you're being locked up for a 21?

A.    Yes.  And he --

Q.    What is a 21?

A.    That's the sex offense.

Q.    Okay.  I think where you read sex offense aggravated --

A.    Aggravated, yes, 21E.

Q.    Okay.  You said 21?

A.    E.

shower the shower doesn't have a toilet or anything like that in it so they could flush contraband. Because we have to strip search them before we put them in a cell.

Q.    Okay.

A.    Strip search them and put a jump suit on them.

Q.    But you have to strip search them before you put them in admin seg?

A.    Yes.

Q.    Okay. You might have told me this already, but where is the shower?

A.    It's on Tiger One right.

Q.    Okay. And is it a shower specifically for instances like this or is it a shower --

A.    No, it's a shower for One Right Tier, the lockdown tier, the admin seg.

Q.    Okay. Do you know -- was Raymond Fobbs -- I know you told me where he was -- where he was housed at the time. Was he housed in a lockdown prior to --

A.    No, well, it's a cell block but it's a working cell block. They go out

and work and they can go out on the yard.

Q.    Okay.  So once you -- and I'm just trying to go step by step here.  Once you took Raymond Fobbs to the shower what happened after that?

A.    I uncuffed him to put him behind the bars.

Q.    What are the other officers that came with you doing at this time?

A.    They're just standing in the lobby.

Q.    Okay.

A.    And I uncuffed him.  Told him -- I told my officers to strip search him.  Give him a jump suit and that he was being placed in admin seg for a rule violation of aggravated sex offense 21.

Q.    And which one of the three officers that you mentioned strip searched him?

A.    I assume it would be Sanders, the captain.

Q.    Okay.

A.    But when I left the unit I mean I don't know actually did it.  I mean he

had the confrontation with Sanders so I'm assuming --

Q.    Okay, so you're saying you were present for any sort of confrontation?

A.    No, sir.

Q.    So other than --

A.    Escorting him to the shower.

Q.    Other than anything you're saying is a rule violation.  Other than the rule violation in your report --

A.    Yes.

Q.    -- rule 21, you didn't observe Raymond Fobbs commit any sort of rule violation or --

A.    No.

Q.    Okay.  So you instructed the officers to strip search him and give him a jumper.  What did you say you did at that point?

A.    I left the unit because --

Q.    Okay.  You said you put him behind the bars?

A.    Well, it's -- it's a cell.  It's a shower cell.

Q.    So you left the unit and where

did you go?

A.   Back to my office.

Q.   Back to the Camp C --

A.   Yeah, supervisor's office.

Q.   Okay.  What happened after that?

A.   I was notified by Captain Sanders that he had a confrontation with Fobbs.

Q.   Did you ever tell Sanders to -- well, you did mention to me that -- let me ask this.  Did you tell Sanders or instruct any other officer to -- did you tell Sanders or any other officer to use the chemical spray?

A.   No, sir.

Q.   Okay.  Was the chemical spray mentioned before you left?

A.   No, sir.

Q.   All right.

A.   Because I'm the highest ranking officer at the camp at that time and if it was needed to be done then I would have did it.  But when I left the unit then that's when the incident went down of what Sanders did because he was the highest

ranking then.

Q.    Okay.  So what you're referring to as the incident the only thing you're saying you really know about was what you were told by either Sanders --

A.    Exactly.

Q.    -- or other officers?  Okay.  And what did Sanders tell you occurred?

A.    He just said that he had a confrontation with him and I made sure everybody was okay and we sent him and the offender to the treatment center to be seen by medical, because anytime we have a confrontation --

Q.    Sent Sanders and Raymond Fobbs to the treatment center?

A.    Separately.

Q.    Separately, okay.  Let me ask you this real quick about cameras.  Are there cameras up, surveillance cameras up at LSP?

A.    Yes.

Q.    Are you generally aware as to what locations and what rooms they're up in?

about the incident after the incident occurred.  Is that right?

A.    Yes.

Q.    Can you tell me specifically what he told you?

A.    He said -- well, he radioed -- we have to radio that there had been a confrontation and when he said that there was a confrontation I went down to the unit.  And then that's when they knew he had to be escorted to the treatment center.  So we called a patrol and had them come pick him up.

Q.    Okay.  So after -- he radioed you that there was a confrontation?

A.    He radioed Angola.

Q.    Okay.

A.    When I heard the traffic I walked back down there.

Q.    When you say you walked back down there, the shower?

A.    No, to the walk.

Q.    Okay.  Why did you walk down to the walk?

A.    Because anytime a confrontation

happens we have to be there for assistance.

Q. Okay. When you got to where you were going, when you got back down to the walk did you observe Raymond Fobbs?

A. Yes.

Q. Okay. Did you observe any physical injuries?

A. Not that I can recall. I mean he come out there in restraints and walked to the patrol.

Q. Restraints, when you say restraints he had handcuffs --

A. Yes.

Q. -- on behind his back?

A. Yes.

Q. Did he have -- did he have leg shackles on?

A. Yes.

Q. Okay.

A. He was fully restrained.

Q. When you say fully restrained are you referring to -- was it just the handcuffs and leg shackles or was there some other apparatus?

elapsed?

A.    It was four to five minutes.  I mean I went straight down there and it's probably from -- probably down this hallway and out the --

Q.    Okay.  Would you be able to say about how far away he was from you when you observed what you observed?

A.    Maybe 40 feet.

Q.    Okay.  And why do you say it's way down there?

A.    Well, it's -- you have to go through a series of gates.

Q.    Did you ever -- that day did you ever physically strike --

A.    No.

Q.    -- Raymond Fobbs?

A.    No.

Q.    Okay.  Have you ever had to physically strike an inmate working at LSP?

A.    I've had to restrain them.

Q.    Okay.  Did you know that Raymond Fobbs was an asthmatic?  He had asthma issues?



R E P O R T E R ' S    P A G E

I, Mark LaCour, Certified Court Reporter, in and for the State of Louisiana, the officer, as defined in Rule 28 of the Federal Rules of Civil Procedure and/or Article 1434(b) of the Louisiana Code of Civil Procedure, before whom this sworn testimony was taken, do hereby state on the record:

That due to the interaction in the spontaneous discourse of this proceeding, dashes (--) have been used to indicate pauses, changes in thought, and/or talk overs; that same is the proper method for a Court Reporter's transcription of proceeding, and that the dashes (--) do not indicate that words or phrases have been left out of this transcript.



Also, any words and/or names which could not be verified through reference material have been denoted with the phrase "(inaudible)."

Mark LaCour, C.C.R.

#  89054

**ASSOCIATED REPORTERS, INC.**
Mark LaCour, C.C.R.
(225) 216-2036

C E R T I F I C A T I O N

I, the undersigned reporter, do hereby certify that the above and foregoing is a true and correct transcription of the stenomask tape of the proceedings had herein, taken down by me and transcribed under my supervision, to the best of my ability and understanding, at the time and place hereinbefore noted, in the above-entitled cause.

I further certify that the witness was duly sworn by me in my capacity as a Certified Court Reporter pursuant to the provisions of R.S. 37:2551 et seq. in and for the state of Louisiana; that I am not of counsel nor related to any of the counsel of any of the parties, nor in the employ of any of parties, and that I have no interest in the outcome of this action.

I further certify that my license is in good standing as a court reporter in and for the state of Louisiana.



OFFICIAL SEAL
MARK LACOUR
Certified Court Reporter
in and for the State of Louisiana
Certificate Number 89054
Certificate expires 12-31-12

Mark LaCour, C.C.R.

#  89054

**ASSOCIATED REPORTERS, INC.**
Mark LaCour, C.C.R.
(225) 216-2036

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
DISCIPLINARY REPORT

Camp J

INSTITUTION: LSP

1. Name of Offender: Raymond Fobbs
2. Number: 130215
3. Date of Incident: 8/21/11
4. Time of Incident: 3:05/Pm
5. Place of Incident: Tiger Yard
6. Job Assignment (Offender): Line 19
7. Housing Assignment (Offender): Tiger 4 Right Cell #10
8. Rule Violated: Sex Offense Agg (Obscenity)
9. Rule Number: 21 E

10. Description of Incident (Include all relevant information - "unusual offender behavior, staff witnesses, physical evidence & disposition, immediate action including use of force", use other side, if necessary)

On the above date and time I, Major Daniel Davis, was in the Camp C supervisor's office. I looked out the window and observed offender Raymond Fobbs 130215 walk to Tiger 4 Right Rear exit door while he was on the Tiger 3 & 4 yard. Offender Fobbs pulled his red penis out of his shorts and began to masterbate he was looking toward the Tiger gate. I exited the education building and MSgt Latoya Dennis was at the Tiger Gate. Offender was removed from the yard and placed in Adm.

11. Offender Placed in Adm. Seg. ☑ Yes ☐ No
12. Signature of reporting employee
13. Name, Title, Assignment (Print): Maj Camp C
14. Date of Report: 8/21/11
15. Time of Report: 3:30/Pm
16. Report (copy) given to above Offender by:
17. Offender's Signature: Refused to Sign
18. Plea by Offender: ☑ Not Guilty ☐ Guilty
19. Verdict: ☐ Not Guilty ☐ Guilty
20. Date of Hearing: 8-24-11    8-26-11
21. Counsel Substitute: DOC# 110760

RECEIVED
AUG 29 2011
-SPINECORDS

22. Motions: Defer for copies of reports
See note

23. Reasons for Disposition:
☑ Report is clear and precise.
☐ Lack of a credible defense/little or no defense.
☐ Based on his statement.
☑ The officer's version is determined to be more credible than the Offender's.
☐ Pled guilty/accepted guilty plea.
☑ Only defense is denying contents of report.
☐ The Offender presented no evidence to refute the charges.
☐ The Investigative officer's testimony was deemed more truthful and accurate than the Offenders.
☐ Plea bargain.
☐ The Offender's demeanor led the board to believe that the Offender's testimony was untrue.
☐ Other

24. Reason for Sentence:
☑ Seriousness of offense
☐ The need to protect the institution, employees, or other
☐ Poor conduct record A total of _____ rule violation(s). A total of _____ Schedule B violations since _____
A total of _____ rule violations since _____
☑ Other Custody Reject

25. Sentence: Cus change to Cp J SH "D"
☐ Suspended _____ Days
☐ Imposed

26. Sentence: Margaret Pope
☐ Suspended _____ Days
☐ Imposed

27. DISCIPLINARY BOARD:
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an Offender who in so causing the loss, damage, or medical expense also is found guilty through the disciplinary process of a violation of one of the rules set out in the Disciplinary Rules and Procedures

CHAIRMAN (DISCIPLINARY OFFICER)
MEMBER

EXHIBIT
DAVIS
1

Case 3:11-cv-00700-JWD-SCR Document 30-4 09/49/6212 Page 266 of 1402
USCA5 266