# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RAYMOND C. FOBBS #130215** | : | **CIVIL ACTION** |
| | : | **NUMBER: 11-700-BAJ-SCR** |
| **VERSUS** | | |
| | : | **JUDGE JACKSON** |
| **DANIEL DAVIS, ET AL.** | : | **MAGISTRATE RIEDLINGER** |

**STATE OF LOUISIANA**
**PARISH OF WEST FELICIANA**

## AFFIDAVIT

**BEFORE ME**, the undersigned Notary, personally came and appeared:

### EDWARD MAYHALL

the undersigned affiant, having first been duly sworn, did depose and state under oath the following:

1.

I have been employed by the Department of Public Safety and Corrections, Louisiana State Penitentiary at Angola, Louisiana (LSP) for over 14 years.

2.

I am currently a Corrections Master Sergeant.

3.

I have reviewed the claims asserted by inmate Raymond Fobbs DOC# 130215 in suit number USM-11-700, wherein he alleges I subjected him to excessive force on the Tiger Unit at Camp C on August 21, 2011.

1



STATE'S EXHIBIT

Blumberg No. 5138

4.

I was assigned to work on the Camp C yard on August 21, 2011.

5.

I observed plaintiff come from around the corner of the Tiger 4 right unit and run onto the Tiger yard on August 21, 2011.

6.

I pointed him out when my supervisors asked me which offender had done so.

7.

Plaintiff was handcuffed, removed off of the yard and taken to administrative segregation.

8.

I did not escort plaintiff to administrative segregation.

9.

I conducted a count of the inmates after they lined up by the fence, brought them into the Tiger 3 and 4 side, locked them down and I went to the kitchen to help them feed after inmate Fobbs was taken off the yard.

10.

I was not on the Tiger 1 unit when the alleged events giving rise to the lawsuit took place.

11.

Contrary to the allegations asserted against me in the complaints, I did not subject plaintiff to force, excessive or otherwise, on August 21, 2011.

The above facts are true and correct to the best of my knowledge, information and belief under penalty of perjury.

2

_____
WITNESS

_____
WITNESS

_____
EDWARD MAYHALL

SWORN TO AND SUBSCRIBED before me, this 3rd day of

_____, 2012, at Angola, Louisiana,

_____
EX OFFICIO NOTARY  Connie McCann
LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS/LSP

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

```
*  *  *  *  *  *  *  *  *  *  *  *  *
                                   *
RAYMOND  C.  FOBBS          *    CIVIL ACTION
                                   *    NO.  11-700
versus                             *
                                   *
DANIEL DAVIS, ET AL         *    POLOZOLA/DALBY
                                   *
*  *  *  *  *  *  *  *  *  *  *  *  *
```

The testimony of **EDWARD AMBROSE MAYHALL**, taken by the plaintiff pursuant to notice and the within stipulation at the Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana, beginning at 12:31 p.m. on October 26, 2012.

Before Mark LaCour, Certified Stenomask Reporter, in and for the State of Louisiana.

Blumberg No. 5138

STATE'S EXHIBIT
L

*ASSOCIATED REPORTERS, INC.*
*Mark LaCour, C.C.R.*
*(225) 216-2036*

# A P P E A R A N C E S

**FOR THE PLAINTIFF, DANIEL DAVIS:**

        GRODNER LAW FIRM
        Attorneys at Law
        Quail Run Drive, Suite B-1
        Baton Rouge, Louisiana  70808

        BY:  BLAKE S. LEGER, ESQ.


**FOR THE DEFENDANTS, DANIEL DAVIS, ET AL:**

        STATE OF LOUISIANA
        Department of Justice
        Civil Rights Sect., Litigation Div.
        1885 North Third Street
        Baton Rouge, Louisiana  70802

        BY:  STACEY JOHNSON, ESQ.

# C O N T E N T S

**EXAMINATION OF EDWARD MAYHALL:**    **PAGE:**

By Mr. Leger:    4

By Ms. Johnson:    25

\* \* \* \* \*

Stipulation:    4

Reporter's Page:    27

Certification:    28

\* \* \* \* \*

**MARKED EXHIBITS:**    (None)

S T I P U L A T I O N

It is stipulated and agreed by and between all parties that this deposition is hereby being taken pursuant to the Federal Rules of Civil Procedure.

All formalities, including the reading and signing of the transcript by the witness are hereby waived.

All objections, except those as to the form of the question and the responsiveness of the answer are reserved until the deposition is used or sought to be used in evidence.

\* \* \* \* \*

**EDWARD AMBROSE MAYHALL**

HAVING BEEN FIRST DULY SWORN

TESTIFIED AS FOLLOWS:

E X A M I N A T I O N

BY MR. LEGER:

Q. Good afternoon, sir. Can you please state your full name?

A. Edward Mayhall.

Q. Do you have a middle name?

A. Ambrose.

Q. Okay. And my name is Blake

Leger.  I'm the attorney for Raymond Fobbs in a lawsuit filed against yourself and three other individuals.  What is your date of birth?

A.

Q.    And how are you employed?

A.    By the Louisiana Department of Corrections.

Q.    How long have you been employed by the Louisiana Department of Corrections?

A.    Fourteen years, give or take.  I don't know the exact.

Q.    That's fine.  How long have you been working here at Louisiana State Penitentiary?

A.    The whole time other than for the evacuation last year.  I went to Cottonport but I was still with Angola inmates.

Q.    What is your current rank?

A.    Master Sergeant.

Q.    Okay.  On August 21st of 2011 were you a Master Sergeant on that day?

A.    Yes, I was.

paperwork I was.

Q.    Okay.  Do you have -- do you remember an incident that day involving a Raymond Fobbs?

A.    Yes, I do.

Q.    Why don't you just tell me what you remember about that incident?

A.    They came on the yard and asked me who had just come from around the corner running.

Q.    Who is they?

A.    My supervisors.

Q.    Okay.

A.    And I told them -- I pointed him out.

Q.    You pointed Raymond Fobbs out?

A.    Yes, I did.

Q.    Okay.  And where are we talking about?  Where --

A.    Tiger yard.

Q.    Tiger yard, okay.  So you were in Tiger yard?

A.    Yes, sir.

Q.    And what were you doing at that time?

A.    I was security on the yard, yard security.

Q.    Okay. You weren't playing a board game?

A.    No, I was not.

Q.    When you pointed him out where were you in relation to Raymond Fobbs, distance-wise?

A.    Ten feet.

Q.    And what was he doing at the time?

A.    At the time he was standing in a crowd.

Q.    And when you say standing in a crowd was there some sort of card game going on?

A.    There's games going on all the time in the yard.

Q.    Okay, but specifically on that day at that time, do you remember if there was a card game going on that you observed?

A.    I can't say yeah, I can't say no. I was watching the inmates on the yard. Si I'm sure there was because they

go out there and play chest and cards and dominos and volleyball and basketball and football.

Q.    Was he sitting or standing?

A.    Standing.

Q.    When you said your supervisors came out who was that specifically?

A.    Major Davis, Lieutenant Savoy, Captain Sanders and Lieutenant Lapraire.

Q.    And you said they asked you who came running around the corner?

A.    Yes.

Q.    When they asked you that you knew what they were referring to?

A.    Yes, because I had seen him come around the corner.

Q.    What corner were they referring to?

A.    The corner of Tiger four right.

Q.    Okay.  Did you know why they were looking for him at that time?

A.    No, I did not.

Q.    What happened after that?

A.    They handcuffed him and escorted him off the yard.

Q.    Okay.  Who handcuffed him?

A.    I'd be lying if you told you anything as to who handcuffed him.

Q.    Okay.  When they came out and asked you who came running around the corner were you sitting or standing at the time?

A.    Standing.

Q.    What did you do after they handcuffed him and escorted him off the yard?

A.    Major Davis told me to bring the rest of the yard in.  So I brought them out -- brought them in and lined them up by the fence and got ready to bring them inside.

Q.    Okay.  When you pointed out Raymond Fobbs at that time to your supervisors did you have any occasion to speak with him or interact with that day before that, Raymond Fobbs?

A.    Just casually passing we'd speak every once in a while.

Q.    Okay.  Did you know that he had an asthma condition or a condition related

to asthma?

A.    No, I did not.

Q.    Do you know now?

A.    I read it in the ARP, yes.

Q.    Okay.  So when you read it in ARP that was the first time?

A.    Yes.

Q.    Did you observe him masturbating that day?

A.    No, I did not.

Q.    So you said you lined up the inmates to go inside?

A.    Yes, I did.

Q.    What happened after that?

A.    We count them to make sure they're all accounted for and then we bring them in by tiers.

Q.    Okay.  When you say we, what --

A.    And any other sergeants on the unit.

Q.    Okay.  Do you remember the other sergeants that were on the unit working directly with you at that time that would have been out on the yard at that time?

A.    Oh, I was by myself on the

yard.

Q.    You were by yourself?

A.    Yes, sir.

Q.    So what happened after that?

A.    We brought the inmates in and we locked them down.

Q.    You brought them into?

A.    Into Tiger Three and Four side.

Q.    Three and Four.  So the inmates that were out in the yard at that time those are all inmates that would have been housed in Three and Four?

A.    Yes, sir.

Q.    That's why it's Tiger Three and Four yard?

A.    Yes, sir.

Q.    What happened after that?

A.    I went down to the kitchen to help them feed.

Q.    So you didn't go with Sanders or Lapraire to escort --

A.    No, sir.

Q.    -- Raymond Fobbs?

A.    No, sir.

Q.    Do you know where they took him?

Q. So you never struck Raymond Fobbs that day?

A. No, I did not.

Q. Have you ever had -- have you ever been reprimanded or had any disciplinary action taken against you in relation to an inmate alleging an excessive force incident?

A. No, I have not.

**MS. WRIGHT-JOHNSON:**

Objection, the question is irrelevant. Subject to the objection you can answer all these questions. We'll just keep a running objection to --

**MR. LEGER:**

Okay.

**MS. WRIGHT-JOHNSON:**

-- questions related to excessive force and his history, possible history about that.

**BY MR. LEGER:**

Q. What was your answer?

A. No, I have not.

Q. Have you ever had any ARPs filed

against you specifically related to the use of chemical spray?

A.    No, I have not.

Q.    Have you ever had to use chemical spray on an inmate yourself?

A.    When I was a supervisor, yes, I did.

Q.    About how many times would you say?

A.    Four or five.

Q.    In your -- when you were a supervisor?

A.    Yes, sir, a non-supervisor is not allowed into the chemical agents.

Q.    Say that again.

A.    If you're not a supervisor you're not allowed to handle chemical agents.

Q.    Okay. Were you trained in the use of force and when it's appropriate?

A.    Yes, I was.

Q.    And from your training tell me when is it appropriate to use the chemical spray on an inmate?

A.    When an inmate is disruptive to

R E P O R T E R ' S    P A G E

I, Mark LaCour, Certified Court Reporter, in and for the State of Louisiana, the officer, as defined in Rule 28 of the Federal Rules of Civil Procedure and/or Article 1434(b) of the Louisiana Code of Civil Procedure, before whom this sworn testimony was taken, do hereby state on the record:

That due to the interaction in the spontaneous discourse of this proceeding, dashes (--) have been used to indicate pauses, changes in thought, and/or talk overs; that same is the proper method for a Court Reporter's transcription of proceeding, and that the dashes (--) do not indicate that words or phrases have been left out of this transcript.

Also, any words and/or names which could not be verified through reference material have been denoted with the phrase "(inaudible)."

Mark LaCour, C.C.R.

#  89054

**ASSOCIATED REPORTERS, INC.**
Mark LaCour, C.C.R.
(225) 216-2036

### C E R T I F I C A T I O N

I, the undersigned reporter, do hereby certify that the above and foregoing is a true and correct transcription of the stenomask tape of the proceedings had herein, taken down by me and transcribed under my supervision, to the best of my ability and understanding, at the time and place hereinbefore noted, in the above-entitled cause.

I further certify that the witness was duly sworn by me in my capacity as a Certified Court Reporter pursuant to the provisions of R.S. 37:2551 et seq. in and for the state of Louisiana; that I am not of counsel nor related to any of the counsel of any of the parties, nor in the employ of any of parties, and that I have no interest in the outcome of this action.

I further certify that my license is in good standing as a court reporter in and for the state of Louisiana.



OFFICIAL SEAL
MARK LACOUR
Certified Court Reporter
in and for the State of Louisiana
Certificate Number 89054
Certificate expires 12-31-12

Mark LaCour, C.C.R.

\#  89054

ASSOCIATED REPORTERS, INC.
Mark LaCour, C.C.R.
(225) 216-2036