**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**RAYMOND C. FOBBS #130215**          **CIVIL ACTION**

                                       **NUMBER: 11-700-BAJ-SCR**

**VERSUS**

                                       **JUDGE JACKSON**

**DANIEL DAVIS, ET AL.**               **MAGISTRATE REIDLINGER**

**PLAINTIFFS' OPPOSITION TO**
*MOTION FOR SUMMARY JUDGMENT* **[61]**

MAY IT PLEASE THE COURT:

On December 14, 2012, Major Daniel Davis, Captain John Sanders, Sergeant Edward Mayhall, and Dr. Tobe Momah filed a boilerplate, shotgun-style *Motion for Summary Judgment* [61] on the basis that the Plaintiff's claims fail to state a claim or should be dismissed on the of qualified immunity and seek the dismissal of any claim based upon the following:

Excessive force;

Retaliation for filing an ARP;

Verbal Harassment and/or threats;

Conspiracy;

Medical Malpractice;

Deliberate Medical Indifference; and

Failure to Intervene.

Genuine issues of material fact preclude the granting of summary jdugment in favor of Defendants, and their motion should be denied.

**I.      BACKGROUND**

Raymond C. Fobbs is an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections, and at all times relevant to the subject matter of this suit, was confined at Louisiana State Penitentiary in Angola, Louisiana.

On August 21, 2011, Mr. Fobbs was playing cards with other inmates on the prison

yard when he was removed from the yard by several guards.  Mr. Fobbs was taken into a shower cell for an unknown violation and ordered to disrobe prior to Administrative Segregation.  He was then twice sprayed with pepper spray despite warning the prison guards of his duty status prohibiting such irritants.  Mr. Fobbs was then forcibly removed from the cell and beaten.[1]

## II.   LAW ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that:

> A party may move for summary judgment, identifying each claim or defense - - or the part of each claim or defense - - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

The United States Fifth Circuit, in *Albatross Shipping Corp. v. Stewart*, found that the "prime purpose of the summary judgment procedure is to secure the just, speedy and inexpensive determination of any action."[2]   Further, in *Slagle v. U.S.*, the Fifth Circuit provided that summary judgment "is authorized only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is."[3]

The denial of a summary judgment on qualified immunity may not be reviewed on appeal unless the sole issues on review are questions of law.

## III.   MR. FOBBS' CLAIMS ARE NOT BARRED BY THE ELEVENTH AMENDMENT

Mr. Fobbs is not suing the State.  As such, his claims are not barred by the Eleventh Amendment as stated by the Defendants in their *Memorandum in Support of Motion for Summary Judgment* [61-1].

## IV.   THE PLAINTIFF MADE AN ARP, WHICH WAS DENIED

---

[1] *See* Rec. Doc. 1.

[2]  326 F.2d 208 (5th Cir. 1964).

[3]  228 F.2d 673 (5th Cir. 1956).

Mr. Fobbs does not have a claim for rejection of an ARP as stated by the Defendants. In fact, the Defendants filed numerous *Motions for Partial Summary Judgment* alleging failure to exhaust administrative remedies.[4] This point as argued by the Defendants is without merit, and no response is needed.

## V.    THE PRISON GUARDS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Title 42, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

To prevail on a § 1983 claim, the plaintiff must show that "the conduct complained of was committed by a person [or persons] acting under color of state law and ... [that] this conduct deprived [the plaintiff] of rights, privileges or immunities secured by the constitution or laws of the United States."[5]

"Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct" by the officials "giving rise to a constitutional violation."[6] "Personal involvement is an essential element of" this cause of action.[7] So, a supervisor may not be held individually liable under § 1983 based on a theory of vicarious liability.[8] More than conclusional assertions of personal action are required as well; "[t]he plaintiff must allege

---

[4] Rec. Docs 8, 15, and 29.

[5] Parratt v. Taylor, 451 U.S. 527, 535 (1981).

[6] Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (internal citations omitted).

[7] Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

[8] Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); *see also Oliver*, 276 F.3d at 742; Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984).

specific facts giving rise to the constitutional claims."[9]

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[10] To determine whether a government official is entitled to qualified immunity for an alleged constitutional violation, the court conducts the two-step analysis of *Saucier v. Katz*.[11]

> We therefore first ask the threshold "constitutional violation question" of whether, taking the facts in the light most favorable to the plaintiff, the officer's alleged conduct violated a constitutional right.[12] If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.[13] If, however, the alleged conduct amounts to a constitutional violation, then we ask the "qualified immunity question" of whether the right was clearly established at the time of the conduct.[14] Qualified immunity allows for officers to make reasonable mistakes about whether their conduct violates the law, and an officer's mistake is reasonable when there are insufficient indicia that the conduct in question was illegal.[15] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[16] If we answer both the constitutional violation and qualified immunity questions affirmatively, the officer is not entitled to qualified immunity." *Lytle v. Bexar County*, 560 F.3d 404, 409-410 (5th Cir. 2009).

"Deliberate indifference" lies between negligence and purpose or knowledge; it is

---

[9]  *Oliver*, 276 F.3d at 741.

[10]  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[11]  Saucier v. Katz, 533 U.S. 194 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009).

[12]  *Citing* Saucier v. Katz, 533 U.S. at 201.

[13]  *Citing* Saucier v. Katz, 533 U.S. at 201.

[14]  *Citing* Saucier v. Katz, 533 U.S. at 201.

[15]  *See* Freeman v. Gore, 483 F.3d 404, 415 (5th Cir. 2007).

[16]  Saucier, 533 U.S. at 202.

"the equivalent of recklessly disregarding [a] risk."[17] This recklessness standard means that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."[18] "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[19] "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."[20]

On August 21, 2011, Mr. Fobbs' Fourth Amendment and Eighth Amendment Rights were clearly established.

## A. Defendants Violated Mr. Fobbs' Fourth and Eight Amendment Rights to be Free from Cruel and Unusual Punishment by Use of Excessive Force

The Eighth Amendment to the United States Constitution guarantees that "[e]xcessive bail shall not be required, nor excessive fines imposed, **nor cruel and unusual punishments inflicted**." The Fourth Amendment guarantees that an inmate in State custody will not be subjected to excessive or necessary force or corporal punishment.

### 1. Use of excessive force by the Defendants

La. R.S. 15:829, which allows the Secretary of the Louisiana Department of Public Safety and Corrections to enact rules and regulations governing inmates and guards, provides that corporal punishment of inmates is forbidden. See also, LAC 22:3309 (B) and

---

[17] Farmer v. Brennan, 511 U.S. 825 (1994).

[18] *Id.* at 837.

[19] *Id.*

[20] *Id.* at 842.

see Department Regulation No. C-02-006 (6)(b)(c)(d).

> A. The secretary of the Department of Public safety and Corrections shall prescribe rules and regulations for the maintenance of good order and discipline for inmates sentenced to the legal custody of the department whether housed in local or state facilities, which rules and regulations shall include procedures for dealing with violations thereof. A copy of such rules and regulations shall be furnished each inmate. **Corporal punishment is prohibited.**

The actions taken by these Defendants against Mr. Fobbs were punitive and amount to corporal punishment and violate state law.

The United States Supreme Court, in *Hudson v. McMillian*, asserted that "the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. [. . .] What is necessary to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation."[21]

The nature of the alleged constitutional violation in this matter stems from the multiple batteries and excessive force used on Mr. Fobbs by prison guards when they sprayed Mr. Fobbs with a chemical agent despite knowing of his duty status prohibiting such agents, and physically beat him. These actions constitute a clear violation of the Eighth Amendment's prohibition against the use of cruel and unusual punishment.

## 2.    Failure to intervene by the Defendants

A prison guard may be found responsible for failing to intervene and take reasonable measures to prevent another guard's use of excessive force on an inmate.[22] The test is whether the observing guard had knowledge of the risk and failed to take reasonable measures to prevent the harm.[23]

Mr. Fobb's sworn Complaint shows, prior to being sprayed with a chemical agent,

---

[21]  *Hudson*, 503 U.S. 1, 5, 112 S.Ct. 995, 998. [Internal citations omitted.]

[22]  Arita v. Stagg, 09-0158 (M.D. La. 8/29/11), 2011 WL 4737402, 3.

[23]  *Id.*

he stated, "I have severe asthma and you can't spray me, it could 'Kill' me."[24]  Mr. Fobbs also stated, "I have a 'Permanent' duty status from medical stating I can not be around fumes or chemicals."[25]  These statements clearly supplies reasonable knowledge to any guard in the vicinity that Mr. Fobbs should not be around chemical agents, and that chemical agents could kill Mr. Fobbs.  As such, any guard in the area had a duty to prevent Captain Sanders from discharging the chemical agent on Mr. Fobbs.

In addition to the discharge of the chemical agent, Mr. Fobbs was physically beaten as evidenced by his bruising and swelling noted by Dr. Momah.  Major Davis noted Mr. Fobbs was totally restrained after getting a shower.[26]  Captain Sanders also stated Mr. Fobbs was restrained with side restraints and shackles after getting a shower.[27]  After being totally restrained, Mr. Fobbs simply could not have created any risk of harm to the guards.  Despite this condition, Mr. Fobbs was physically beaten as shown by his sworn Complaint.[28]  Any guard in the vicinity would be required to protect Mr. Fobbs from this excessive use of force.

The facts have established that Mr. Fobbs was injured and photographs were taken of the injuries.[29]  The depositions of the guards show Mr. Fobbs was completely restrained after being forced to take a shower.  Despite the restraints, Mr. Fobbs sworn Complaint shows he was physically beaten by Captain Sanders, Major Davis, and Msgt Mayhall.[30]  All three of the Defendants would be charged with the duty to intervene and protect Mr.

---

[24] Rec. Doc. 1

[25] *Id.*

[26] Davis Dep. 45:21.

[27] Sanders Dep. 66:19-22.

[28] Rec. Doc. 1 .

[29] *See generally* Momah Dep.

[30]  Rec. Doc. 1.

Fobbs from receiving a beating while he was restrained.  Despite this charge, not one of the Defendants attempted to intervene and protect Mr. Fobbs; rather, all three guards participated in the beatings.

Mr. Fobbs did not present any risk of harm when he was beaten, and as such, the guards should have protected him from receiving physical injuries.  Summary judgment should be denied.  At the very least, the evidence proves there are material issues of fact in dispute; therefore summary judgment is not appropriate.

### 3.    Verbal harassment and/or threats is defined as abuse

The Corrections Services Employee Manual (Manual) for the Louisiana Department of Public Safety and Corrections sets forth policies and procedures for corrections employees.  Under the "Employee Rules" section, the Manual states as follows:

> No employee shall abuse an offender for any reason.  Forms of abuse include, but ane not limited to, the following actions:
> - Verbal abuse;
> - Harassment;
> - Damaging, destroying, or otherwise abusing an offender's belongings through willful act or gross negligence; and
> - Physical abuse.[31]

Mr. Fobbs' claim of verbal harassment and/or threats is a clear violation of the rules contained in the Manual.  Despite Defendants' claims that verbal harasment and/or threats are not actionable as constitutional violations, the Defendants in this matter clearly violated their own rules and policies as set forth in the Manual.  By violating these policies, the guards abused Mr. Fobbs and violated his right to be free from cruel and unusual punishment.  Violations of policies at set forth in the Manual are a *per se* violation of Mr. Fobbs' Constitutional Rights which clearly falls under the category of claims afforded under Title 42, Section 1983.  As such, summary judgment on this issue should be denied.

### B.    Defendants Subjected Mr. Fobbs to Cruel and Unusual Punishment

Department Regulation No. C-02-006 controls the use of chemical agents on

---

[31] Corrections Services Employee Manual Part I, 3 (Exhibit A).

inmates.  In pertainment part, this regulation provides chemical agents may be used on an offender only in the following circumstances, pursuant to Section 12(A):

1)  To quell a riot and/or prevent loss of life, serious injury to person(s) and/or extensive destruction of property;
2)  To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution; or
3)  To regain control of the institution or part of it.[32]

The Department Regulations prohibit the use of chemical agents unless one of these three events is present.

Based on the facts of the discharge against Mr. Fobbs, none of the qualifying events for chemical agents were present.  Mr. Fobbs was confined in a small shower cell; therefore discharge was not necessary to prevent loss of life, serious injury, or extensive destruction of property.  Likewise, there was no disturbance that could jeopardize the safety, security, and good order of the institution.  Finally, there was no need to regain control of the institution at the time of discharge.  As such, the use of chemical agents on Mr. Fobbs was a clear violation of Department Regulation No. C-02-006 12(A) and was unauthorized.

As stated above, violations of Policies and Regulations are *per se* unconstitutional violations and are actionable under Section 1983.  Furthermore, Regulation C-02-006 12(B) states the use of chemical agents is considered a use of force and only a minimal amount of force should be applied.  Here, the unauthorized use of chemical agents on inmates clearly amounts to cruel and unusual punishment.

### 1.  Major Davis

The defendant points to deposition testimony to show Major Davis did not subject Mr. Fobbs to excessive force.  However, Mr. Fobbs' sworn Complaint alleges Major Davis

---

[32] Exhibit B.

was present when the chemical agent was released.[33]   Furthermore, Mr. Fobbs also alleges that Major Davis was present during, and took part in, the beating he sustained prior to his transportation to the prison treatment center.[34]   Mr. Fobbs propounded discovery directed at the amount of chemical agents that were used.   Initially, the Defendants answered that the logs were lost. When pressed, an affidavit was produced.[35]

Exhibit D indicates that only one can of chemical agent was used on August 21, 2011, and only on Mr. Fobbs.  When again pressed for disclosure, the State produced a log book indicating there were three (3) cans of chemical agents.[36]  The log book indicates that Can 3 held 136g prior to the time the Defendants used chemical agents against Mr. Fobbs.  After its use, its weight was 138g.  That is, it actually *gained* two (2) full grams.  Mr. Fobbs has issued additional discovery to determine if a new can weighs 138g.  If so, then the can of 136g was used and replaced with a full can containing 138g.

The log book indicates that Can 1 weighed 94g prior to the time chemical agents were used on Mr. Fobbs.  After, its weight indicated it lost 2 grams.  Two grams would account for a short burst.  The log book indicates that Can 2 weighed 94g prior to the use of chemical agents.  After use, its weight indicated it lost 50g and now weighed 44g total.

All total, the records indicate that 136g of Can 3, 2g of Can 1, and 50g of Can 2 were sprayed on Mr. Fobbs.  A total of 188g of chemical agent was sprayed upon Mr. Fobbs.   This does not constitute two short bursts as stated by the Defendants. Furthermore, this is clearly an excessive amount of force and is obviously in violation of Regulation No. C-02006 12(B).  This is a *per se* unreasonable and excessive amount of force to be applied to a non-violent inmate such as Mr. Fobbs.

---

[33]  Rec. Doc. 1.

[34]  *Id.*

[35]  *See* Exhibit C (letter dated November 9, 2012) and Exhibit D.

[36]  Exhibit B.

At the very least, the conflicting testimony proves there is a material issue of fact in dispute as to whether Major Davis participated during the beating of Mr. Fobbs. Likewise, there is a material issue of fact in dispute as to whether Major Davis was present during the discharge of chemical agents and/or the beating of Mr. Fobbs. If Major Davis was present, then he failed to intervene during the cruel and unusual punishment of Mr. Fobbs; thereby violating Mr. Fobbs' Eighth Amendments rights. After reviewing the conflicting testimony, it is clear several material issues of fact are in dispute. As such, summary judgment is not appropriate.

### 2.    Master Sergeant Mayhall

Again, Defendants rely on the deposition transcript to show Msgt Mayhall was not present during the beating of Mr. Fobbs. Again, the sworn Complaint of Mr. Fobbs alleges he was present during the beating he received after being sprayed with the chemical agent.[37]    For the same reasons as stated above, summary judgment is not appropriate since there are clearly several material issues of fact in dispute.

### 3.    Captain Sanders

It is undisputed that Captain Sanders discharged the chemical agent on Mr. Fobbs. The Defendants own expert, Dr. Hines, states that any exposure to a chemical agent such as mace would violate Mr. Fobbs' duty status.[38] Defendants argue that Mr. Fobbs smokes and the exposure to mace is the same as smoking a cigarette. However, what is at issue here is the actions of prison guards in delivering cruel and unusual punishment to Mr. Fobbs. It is immaterial whether Mr. Fobbs personally chooses to expose himself to cigarette smoke which may or may not be similar to exposure to a chemical agent. The simple fact is Mr. Fobbs was subjected to chemical agents which violate his duty status under conditions that violate Regulation C-02-006. This violation was done at the hands

---

[37] *Id.*

[38] Expert Report of Dr. Hines, Exhibit E.

of another person and not through the choice of Mr. Fobbs.

Furthermore, the sworn Complaint of Mr. Fobbs states Captain Sanders was told of the restriction from chemical agents.[39]  This provides notice of the status which Captain Sanders chose to violate, thereby inflicting cruel and unusual punishment on Mr. Fobbs. Defendants argue the actions of Captain Sanders were not done maliciously or sadistically. However, more than one and one-half the cans were used on Mr. Fobbs who was completely contained in a cell and presented no form of risk or harm to the guards at the time.[40]

Mr. Fobbs' sworn Complaint states that Captain Sanders responded, "I don't want to hear that s___.  I don't give a f___." after being told of Mr. Fobb's restricted duty status.[41] These facts alone prove Captain Sanders was not trying to gain control of Mr. Fobbs at the time; rather, he acted in a manner calculated and designed to cause cruel and unusual punishment in violation of the Eight Amendment.  At the very least, the acts of spraying the chemical agent on Mr. Fobbs was excessive force in light of the restricted duty status.

Mr. Fobbs also claims he was beaten by Captain Sanders.  La. R.S. 15:829 entitled "Discipline of inmates" provides in pertinent part as follows:

> A. The secretary of the Department of Public Safety and Corrections shall prescribe rules and regulations for the maintenance of good order and discipline for inmates sentenced to the legal custody of the department whether housed in local or state facilities, which rules and regulations shall include procedures for dealing with violations thereof.  A copy of such rules and regulations shall be furnished to each inmate. **Corporal punishment is prohibited.** [Emphasis added]

The use of corporal punishment on inmates is a violation of law.  Summary judgment is inappropriate as a matter of law even if the actions taken by the guards was, as they continue to insist, a good faith effort to maintain or restore discipline.

---

[39] Rec. Doc. 1.

[40] Rec. Doc. 61-1.

[41] Rec. Doc. 1.

Captain Sanders' actions amount to cruel and unusual punishment, as well as corporal punishment. These actions violate the Eighth Amendment and as such, Captain Sanders is not entitled to qualified immunity. At the very least, the facts prove there are numerous genuine issues of material fact in dispute which would preclude summary judgment from being granted.

### 3.   Mr. Fobb's Claim and the *Hudson* factors

The Defendants state the five prongs of the *Hudson*[42] inquiries in their *Memorandum in Support of Motion for Summary Judgment* [61-1]. However, the relationship between the need for force and the amount of force used is clearly excessive. Captain Sanders was aware of the restricted duty status yet still discharged chemical agents on Mr. Fobbs. Likewise, Mr. Fobbs presented no threat as he was confined in a cell at the time of the discharge. Regardless, the physical beatings Mr Fobbs suffered is extreme, unwarranted, and a clear violation of his Eighth Amendment rights. At the very least, it is clear that genuine issues of material fact exist as to the extent of the force used, which guards were present, and which guards failed to intervene. As such, summary judgement is not appropriate and should be denied.

## VI.   DR. MOMAH IS NOT ENTITLED TO QUALIFIED IMMUNITY

The elementary principles of the Eighth Amendment's prohibition on the use of cruel and unusual punishment have established the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In *Estelle v. Gamble*,[43] the United States Supreme Court concluded:

> [D]eliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison

---

[42]   Hudson v. McMillian, 112 S. Ct. 995 (1992).

[43]   Estelle v. Gamble, 429 U.S. 97 (1976).

doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.[44]

To state an Eighth Amendment claim in this context, a plaintiff must allege a deprivation of medical care sufficiently serious to show that the prison official knew of and disregarded an excessive risk to inmate health or safety.[45] For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.[46] However, under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk.[47]

In *Smith v. Reynaud*,[48] the plaintiff, an inmate at Avoyelles Correctional Center, suffered chest pains and notified a nurse that he was having a medical emergency. The nurse failed to immediately call a doctor for him or even to assess his medical condition. The nurse merely took the plaintiff's bottle of nitroglycerin pills to be refilled, returning it to him two days later. As a result of the nurse's inaction, the plaintiff had to endure chest pains for a sustained period of time and even suffered a blackout. Although this case was related to the dismissal at the trial court on the basis of failure to state a claim, the federal district court, Louisiana Western District, ruled in favor of the plaintiff, stating that the nurse's inaction demonstrated a deliberate indifference to the plaintiff's serious medical needs.

In *Harris v. Hegmann*, the Fifth Circuit reversed a decision of a trial court dismissing

---

[44]  429 U.S. at 104.

[45]  Smith v. Reynaud, 99-1858 (W.D. La. 1/25/00), 89 F. Supp. 2d 784.

[46]  Smith v. Brenoettsy, 158 F.3d 908, 912 (5th Cir.1998).

[47]  Reeves v. Collins, 27 F.3d 174 (5th Cir.1994).

[48]  89 F. Supp.2d 784.

14

the plaintiff's, a prison inmate's, claim for relief under § 1983 alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. The plaintiff in *Harris* was an inmate at Hunt Correctional Center who had received medical treatment for a broken jaw. Doctors performed oral surgery on the plaintiff to remove the retaining wires used to set his jaw. Thirty to forty minutes after the surgery his jaw shifted and fell out of place, causing him excruciating pain. When Harris told a prison guard what had apparently happened to his jaw, the guard refused to take him back to the clinic and instead returned him to the correctional center without treatment. Harris was denied treatment by several other prison officials until, finally, days later he received treatment.

In the instant case, Dr. Momah physically observed bruising and swelling on Mr. Fobbs' body.[49] Mr. Fobbs was prescribed medicine to deal with the pain by Dr. Momah. This medication was limited due to Mr. Fobbs' high blood pressure.[50] Furthermore, Dr. Momah had no information concerning Mr. Fobbs' duty status[51] which would include keeping Mr. Fobbs away from chemical agents. Despite noticing bruising, swelling, and difficulty breathing, Dr. Momah only prescribed a minimal amount of medication. Mr. Fobbs' blood pressure would eventually return to a normal level, and Dr. Momah could have prescribed a higher dose of pain medication for Mr. Fobbs to take at a later time. However, this was not done despite having knowledge of the bruising and swelling on Mr. Fobbs' body. As a result, Mr. Fobbs remained in pain for an extended period of time.

The intentional actions of Dr. Momah give rise to deliberate medical indifference as shown in both *Smith* and *Harris*. As such, Mr. Fobbs can show a valid claim which would remove the protection of qualified immunity normally afforded Dr. Momah. At the very least, material issues of fact concerning the quality and extent of the treatment of Mr.

---

[49] Momah Dep. 20:24; 21-22:11-15.

[50] *Id.* at 24:21-15; 25:1-13.

[51] *Id.* at 32:4-8.

Fobbs exist which would preclude summary judgment on this matter. Therefore, the Defendants' *Motion for Summary Judgment* should be denied.

## VII.    MEDICAL MALPRACTICE

While the Defendants' *Motion for Summary Judgment* [61] avers Mr. Fobbs has brought a claim alleging medical malpractice, this issue is not briefed. In any event, the facts established in the above-paragraphs prove there are general issues of material fact at issue. As such, summary judgment in not appropriate and should be denied.

### CONCLUSION

For the following reasons set forth herein, Plaintiff is entitled to a judgment denying summary judgment on the basis that material facts remain in dispute.

Respectfully submitted:
By Donna Grodner

s/Donna Grodner
Donna U. Grodner (20840)
Blake S. Leger (32251)
Matthew J. Davis (34508)
GRODNER LAW FIRM
2223 Quail Run Drive, Suite B-1
Baton Rouge, Louisiana 70808
(225)769-1919 FAX 769-1997

Certificate

I do hereby certify that I have served the below listed counsel via fax or email on January 7, 2013.

s/Donna Grodner

Stacey Johnson
Assistant Attorney General
Louisianan Dept. of Justice
Litigation Division
1885 N. 3rd Street, 4th Floor
P.O. Box 94005
Baton Rouge, La 70802
225.326.6402 fax 225.326.6495
johnsonst@ag.state.la.us