UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RAYMOND C. FOBBS (#130215)

VERSUS                                          CIVIL ACTION

DANIEL DAVIS, ET AL                             NUMBER 11-700-SDD-SCR

<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, April 15, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RAYMOND C. FOBBS (#130215)

VERSUS                                          CIVIL ACTION

DANIEL DAVIS, ET AL                             NUMBER 11-700-SDD-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court is the defendants' Motion for Summary Judgment. Record document number 61. The motion is opposed.[1] Defendants filed a surreply.[2]

For the reasons which follow, the defendants' motion should be granted in part and denied in part.

## I. Factual Allegations

Plaintiff Raymond C. Fobbs, an inmate confined at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Maj. Daniel Davis, Capt. John Sanders, Sgt. Edward Mayhall and Dr. Tobe Momah[3]. Plaintiff alleged that defendants Maj. Davis and Capt. Sanders were deliberately indifferent to his health, defendants Maj. Davis, Capt. Sanders and

---

[1] Record document number 74.

[2] Record document number 86.

[3] Defendant was identified as Dr. Momah Tobe in the Amended Tort Pursuant to 42 U.S.C. § 19083 (hereafter "Amended Complaint). Record document number 12.

Sgt. Mayhall subjected him to an excessive use of force, and Dr. Momah was deliberately indifferent to his serious medical needs, all in violation of his constitutional rights.

Specifically, the plaintiff alleged that on August 21, 2011, he and several other inmates were playing an "authorized card game" on the prison yard at Camp C.  Plaintiff alleged that several ranking officers, including defendants Maj. Davis and Capt. Sanders, ran onto the prison yard, handcuffed an inmate named "Mike" and removed "Mike" from the yard.

Plaintiff alleged that a short time later "Mike" was released and the same officers returned to the yard and removed another unknown inmate who had been observing the card game.

Plaintiff alleged that Maj. Davis and Capt. Sanders then asked him how long the second unknown inmate had been sitting at the card table with the plaintiff.  Plaintiff alleged that he responded, "Ask security.   Security is sitting right there."   Plaintiff alleged that he was referring to Sgt. Mayhall who was sitting nearby playing a board game.

Plaintiff alleged that Capt. Sanders responded, "Oh, you're a smart ass."  Plaintiff alleged that Capt. Sanders placed him in handcuffs while he was still seated at the card table.  Plaintiff alleged that Maj. Davis and Capt. Sanders handled him roughly as they escorted him from the yard to a shower cell where he was ordered to disrobe.

Plaintiff alleged that Maj. Davis remained with him while Capt. Sanders exited the area. Plaintiff alleged that from a window in the shower he observed Capt. Sanders go into a closet and retrieve a chemical agent. Plaintiff alleged that when Capt. Sanders approached him with a can of pepper spray, he advised the officers that he suffers from asthma and has a permanent medical duty status prohibiting his exposure to chemicals. Plaintiff alleged that Capt. Sanders said he did not care and then sprayed the plaintiff with the chemical agent. Plaintiff alleged that Capt. Sanders then threw a bucket of hot water on the plaintiff and sprayed him a second time with the chemical agent. Plaintiff alleged that Maj. Davis failed to intervene.

Plaintiff alleged that he was handcuffed behind his back and then Capt. Sanders and Maj. Davis beat him with their fists. Plaintiff alleged that he was removed from the shower cell and while being dragged down the tier he was rammed into an operating fan and a cell door. Plaintiff alleged that he was pushed into a cell where Capt. Sanders, Maj. Davis and Sgt. Mayhall kicked, beat and punched him.

Plaintiff alleged that he was transported to the medical treatment center where an IV was inserted, he was given two breathing treatments and his injuries were photographed. Plaintiff alleged that Dr. Momah failed to prescribe pain medication or a salve for his chemical burns.

3

Finally, the plaintiff alleged that he was denied due process when Trish Foster, Legal Programs Director, rejected Administrative Remedy Procedure ("ARP") LSP-2011-2363.

Defendants moved for summary judgment relying on a statement of undisputed facts, their affidavits, affidavits from Edward Mayhall, Jeffrey Franklin, Eli Wilson, Bobby Achord, excerpts from their depositions and the depositions of Edward Mayhall and the plaintiff, copies of the plaintiff's medical records and medical duty status reports, copies of Unusual Occurrence Reports dated August 21, 2011, copies of disciplinary reports issued to the plaintiff on August 21, 2011, copies of portions of the plaintiff's master prison record including conduct report and inmate location sheets, copies of the chemical agent report for July and August 2011, the expert report of Dr. William Hines, copies of the 2011 Duty Investigator Logbook Entry dated August 21, 2011, and copies of defendant Capt. Sanders' medical records.

Plaintiff opposed the defendants' motion for summary judgment relying on an excerpt from the 2008 Louisiana Department of Public Safety and Corrections—Corrections Services Employee Manual, a copy of Department Regulation No. C-02-006 dated December 20, 2010, the affidavit of Eli Wilson (State's exhibit K), copies of the Chemical Agent Report for July and August 2011 (State's Exhibit L), the affidavit of Angela Butler, copies of Chemical Agent Logbook for Tiger 1 & 2 dated August 21, 2011, the expert report of Dr. Hines

and defendants' Third Supplemental Answers to Plaintiff's First Set of Interrogatory Numbers 2, 3, 5 and 7.

Plaintiff's Amended Complaint can be read to allege four distinct claims:[4]

(1) Maj. Davis and Capt. Sanders were deliberately indifferent to his health when they sprayed him with a chemical agent after being informed that the plaintiff is asthmatic, in violation of his Eighth Amendment rights;

(2) Maj. Davis, Capt. Sanders and Sgt. Mayhall subjected him to an excessive use of force, in violation of his Eighth Amendment rights;

(3) Dr. Momah was deliberately indifferent to the plaintiff's serious medical needs when he refused to prescribe the plaintiff pain medication and a salve for chemical burns, in violation of his Eighth Amendment rights ; and,

(4) Legal Programs Director Trish Foster rejected ARP LSP-2011-2363, in violation of his due process rights.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  Supporting

---

[4] Record document number 12.

5

affidavits must set forth facts which would be admissible in evidence.  Opposing responses must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(c).

**B. Qualified Immunity**

Defendants argued that they are entitled to qualified immunity because their conduct did not violate any of the plaintiff's clearly established constitutional or statutory rights of which a reasonable person would have known.

A state official sued in his individual capacity for damages may assert a qualified immunity defense. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978).  This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).  In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights he is alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987).  The protections afforded by the qualified immunity defense turn on the

6

"objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law. *Id.*, at 639, 107 S.Ct. at 3038. The court does not ascertain solely whether the law was settled at the time of the defendant's conduct, but rather, when measured by an objective standard, a reasonable officer would have known that his conduct was illegal. Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), *citing Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989); *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988).

### Claims 1 & 2: Deliberate Indifference and Excessive Force

Plaintiff alleged that Maj. Davis and Capt. Sanders were deliberately indifferent to his health when they sprayed him with a chemical agent after being informed that the plaintiff is asthmatic, in violation of his Eighth Amendment rights. Plaintiff further alleged that Maj. Davis, Capt. Sanders and Sgt. Mayhall subjected him to an excessive use of force, also a violation of his Eighth Amendment rights.

At the time of the alleged incident, a reasonable corrections officer would have known that spraying a prisoner with a chemical agent and beating him without provocation was not objectively

reasonable. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995 (1992); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986) (force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline).

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

Force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, *supra*; *Whitley v. Albers*, *supra*. A necessary element of the excessive force claim is the proof of injury resulting from the use of force. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S.Ct. 1298 (1993).

There is conceptual distinction between the *de minimis* injury and a *de minimis* use of force. *Wilkins v. Gaddy*, 559 U.S. 34, 36,

130 S.Ct. 1175, 1178 (2010) (per curiam) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."). To prevail on an Eighth Amendment excessive force claim, the plaintiff must establish that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and that he suffered an injury. *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996). The Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10, 112 S.Ct. at 1000. The absence of serious injury, while relevant to the inquiry, does not preclude relief. The Fifth Circuit Court of Appeals has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an Eight Amendment excessive force claim. *Brown v. Lippard*, 472 F.3d 384, 386 (5th Cir. 2006).

Moreover, the Supreme Court has made clear that the presence of even minor injuries do not relieve the defendants of liability for using excessive force. *See Wilkins*, 130 S.Ct. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). For Eighth Amendment purposes, evidence of the existence and extent of injuries are not dispositive. Instead, such information is

9

considered in conjunction with the other *Hudson* factors to help determine whether the force used was excessive. *See Brown,* 472 F.3d at 386-87 ("In evaluating excessive force claims, courts may look to the seriousness of the injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'") (quoting *Whitley*, 475 U.S. 321, 106 S.Ct. 1085).

Plaintiff alleged that on August 21, 2011, defendant Capt. Sanders sprayed him with a chemical agent after the plaintiff informed him that he suffers from asthma and has a permanent medical duty status prohibiting his exposure to chemicals. Plaintiff alleged that defendant Capt. Sanders told him he did not care and then sprayed the plaintiff with the chemical agent. Plaintiff alleged that defendant Capt. Sanders then threw a bucket of hot water on the plaintiff and sprayed him a second time with the chemical agent. Plaintiff alleged that defendant Maj. Davis observed the incident but failed to intervene on his behalf.

Plaintiff alleged that he was handcuffed behind his back and then defendants Capt. Sanders and Maj. Davis beat him with their fists. Plaintiff alleged that he was then removed from the shower cell and while being dragged down the tier he was rammed into an operating fan and  a cell door. Plaintiff alleged that he was pushed into a cell where defendants Capt. Sanders, Maj. Davis and

Sgt. Mayhall kicked, beat and punched him.

Defendants offered a different version of the incident. Defendant Maj. Davis denied that he used any force on the plaintiff on the day of the incident.[5] Defendant Maj. Davis asserted that on August 21, 2011, he observed the plaintiff walk to the door on Tiger 4 right and masturbate while looking towards the gate where a female corrections officer was standing.[6] Defendant Maj. Davis asserted that he returned to his office and did not return to the walk until after receiving a dispatch from defendant Capt. Sanders that he was involved in a confrontation with the plaintiff.[7]

Defendant Capt. Sanders denied that he used excessive force against the plaintiff.[8] Defendant Capt. Sanders asserted that the plaintiff was removed from the yard, was issued a disciplinary report for aggravated sex offense and was placed in administrative segregation.[9]

Defendant Capt. Sanders asserted that he escorted the plaintiff to the shower on Camp C Tiger 1 right and gave him several direct orders to remove his clothing so he could be "shook

---

[5] Record document number 63-2, affidavit Daniel Davis, p. 3, ¶ 13.

[6] *Id.*, p. 2, ¶ 5.

[7] *Id.*, ¶¶ 8-9.

[8] Record document number 63-1, affidavit John Sanders, p. 4, ¶ 20.

[9] *Id.*, p. 2, ¶ 4.

11

down" and placed in a jumpsuit, but the plaintiff refused to comply.[10]  Capt. Sanders that he left the unit, retrieved a can of Sabre Red Phantom chemical agent, returned to the shower and gave the plaintiff several more direct orders to remove his clothing.[11] Defendant Capt. Sanders asserted that when the plaintiff continued to refuse to comply with orders he administered a one second burst of chemical agent in the shower.[12] Defendant Capt. Sanders asserted that because the plaintiff continued to refuse to comply with his orders he administered a second burst of chemical agent.[13] Defendant Capt. Sanders asserted that after the second burst of chemical agent was sprayed, the plaintiff removed his clothing, was "shookdown", showered, was given a clean jumpsuit and was restrained so he could be escorted back to his cell.[14]

Defendant Capt. Sanders asserted that when he opened the shower door, the plaintiff tried to head butt him so he had to take the plaintiff to the ground to gain control of the situation.[15] Defendant Capt. Sanders asserted that he escorted the plaintiff to his cell and had to grab him and push him into the cell because the

---

[10] *Id*. at ¶¶ 5-6.

[11] *Id*. at ¶¶ 7-8.

[12] *Id*. at ¶ 9.

[13] *Id*. at ¶¶ 9-10.

[14] *Id*., p. 3, ¶¶ 11-12.

[15] *Id*. at ¶ 13.

plaintiff resisted.[16]  Defendant Capt. Sanders asserted that he did not know the plaintiff was asthmatic and denied that the plaintiff told him he was asthmatic before he released mace into the plaintiff's cell.[17]   Defendant Capt. Sanders asserted that Maj. Davis, Assistant Warden Chad Menzina and Lt. Col. Cassandra Temple were notified of the incident.[18]

Defendant MSgt. Mayhall denied that he was on Tiger 1 unit when the alleged incident took place on August 21, 2011.[19] Defendant MSgt. Mayhall asserted that on the day of the incident he was assigned to work on the Camp C yard.[20]  Defendant MSgt. asserted that on the day of the incident he observed the plaintiff come from around the corner of the Tiger 4 right unit and run onto the Tiger yard.[21]   Defendant MSgt. Mayhall asserted that when questioned by his supervisors, he identified the plaintiff as the offender he had observed run onto the yard.[22]  Defendant MSgt. Mayhall asserted that the plaintiff was handcuffed and removed from

---

[16] *Id.* at ¶ 14.

[17] *Id.* at ¶ 15.

[18] *Id.* at ¶ 17.

[19] Record document number 63-3, affidavit of Edward Mayhall, p. 2, ¶ 10.

[20] *Id.* at ¶ 4.

[21] *Id.* at ¶ 5.

[22] *Id.* at ¶ 6.

the yard by another corrections officer.[23]

It is apparent from the foregoing recitation of the parties' different versions of the events that there are significant material facts in dispute regarding the *Hudson* factors, i.e., need for the application of any force at all, the relationship between the need for and the use of force, the threat reasonably perceived by the prison officials, and efforts made to temper the severity of the response to the perceived need.  *See Hudson*, 503 U.S. at 6-7, 112 S.Ct. at 998-999.  Resolution of these disputed factual issues will turn on the credibility of the witnesses and weighing of the evidence.  When ruling on a motion for summary judgment, the court cannot make credibility determinations nor weigh the evidence.

## Claim 3: Medical Indifference

Plaintiff alleged that defendant Dr. Momah was deliberately indifferent to his serious medical needs when he refused to prescribe pain medication for the plaintiff and a salve for chemical burns.  Plaintiff alleged that defendant Dr. Momah conspired with unidentified prison officials to downplay "the brutalizing of plaintiff."

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious

---

[23] *Id*. at ¶¶ 7-8.

14

medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment he felt he should have is not the issue. *Estelle v. Gamble*, *supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Unsuccessful medical treatment does not give rise to a Section 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation. *Varnado, supra*.

Plaintiff's medical records showed that on August 21, 2011, the plaintiff was examined at the Robert E. Barrow, Jr. Treatment Center after being involved in a confrontation with security officers.[24] Plaintiff complained of shortness of breath.[25] The Emergency Medical Technician ("EMT") administered oxygen and albuterol which is used to treat asthma exacerbation and documented the plaintiff's injuries on a Body Chart.[26] Defendant Dr. Momah examined the plaintiff and ordered IV fluids to help him breath and 250 milligrams Solu-Medrol®, a steroid, to clear his lungs.[27] In addition, because the plaintiff's heart rate was irregular and his

---

[24] Record document number 61-6, pp. 5-8.

[25] *Id*.

[26] *Id*. at pp. 5, 7; record document number 62-4, p. 2, ¶ 6 affidavit Dr. Tobe Momah.

[27] Record document number 61-6, p. 6; record document number 62-4, p. 2, ¶ 8.

blood pressure was very high, defendant Dr. Momah gave the plaintiff clonidine, a blood pressure pill, and continued to monitor him.[28]  Physical examination showed that the plaintiff had contusions with bruising, swelling and no broken skin on his shoulders and on his left wrist with no break in the skin.[29]  In addition, the plaintiff lost his great toenail and was ordered dry dressing for the foot and any other injuries.[30]  X-rays were taken of the plaintiff's chest and right foot.[31]  X-rays revealed no chest infection and the plaintiff's foot was negative for a fracture.[32]  Plaintiff was prescribed Tylenol® for pain and prednisone, a steroid, to treat the effects on his asthma.[33]

There is absolutely no evidence in the record that Dr. Momah was deliberately indifferent to the plaintiff's serious medical needs.  Plaintiff's dissatisfaction with the medications prescribed does not rise to the level of a constitutional violation.

Plaintiff further alleged that defendant Dr. Momah conspired with unidentified prison officials to minimize the degree of the plaintiff's injuries.

---

[28] Record document number 62-4, p. 2 ¶ 9.

[29] *Id*. at ¶ 10.

[30] *Id*. at ¶ 11.

[31] *Id*. at ¶ 12.

[32] *Id*.

[33] *Id*. at p. 3, ¶ 14.

16

To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act. *Arseneaux v. Roberts*, 726 F.2d 1022 (5th Cir. 1982).   The conspiracy allegations made by the plaintiff are conclusory,  and more than a blanket of accusation is necessary to support a § 1983 claim.  *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820 (1984); *Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir. 1987); *Arseneaux v. Roberts, supra*.  Defendant Dr. Momah is entitled to summary judgment as a matter of law on this claim.

### Claim 4: Rejection of Plaintiff's ARP

Defendants moved for summary judgment on the plaintiff's claim that his ARP was improperly rejected.

Plaintiff opposed the motion on the ground that he did not make a claim for the rejection of is ARP.[34]

A review of the Amended Complaint showed that in Claim 4 the plaintiff alleged that Trish Foster rejected his  ARP in violation of his due process rights.[35]

To be liable under § 1983, a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to

---

[34] Record document number 74, pp. 2-3, § IV.

[35] Record document number 12, p. 9.

17

be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983).

First, the defendants are not liable for the alleged actions or inactions of Trish Foster, who was not named as a defendant. Second, the Administrative Remedy Procedure does not itself establish any federal right. It is a mechanism for resolving disputes at the institutional level.

### C. Eleventh Amendment Immunity — State Law Claims

Defendants argued that the Fifth Circuit decision in *Hughes v. Savell*, 902 F.2d 376 (5th Cir. 1990) (applying *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900 (1983)), requires that all state law claims asserted against them in their personal capacity be dismissed as barred by the Eleventh Amendment.

It is not necessary to address the application of *Hughes* to the plaintiff's claims. A review of the Amended Complaint showed that the plaintiff did not allege any state law claim against any defendants.[36]

### D. Verbal Abuse

Defendants argued that the plaintiff's claims regarding verbal abuse do not rise to the level of a constitutional violation.

Plaintiff responded that the Corrections Service Employee Manual ("Manual") prohibits verbal abuse. Plaintiff argued that a violation of the policies set forth in the Manual is *per se* a

---

[36] Record document number 12.

violation of the plaintiff's constitutional rights.

First, a review of the Amended Complaint showed that the plaintiff did not allege that his constitutional rights were violated as a result of verbal abuse.[37]

Second, even if the plaintiff's Amended Complaint can be read to allege a claim of verbal abuse, the claim does not rise to the level of a constitutional violation.

Allegations of verbal abuse alone do not present claims under section 1983.  "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." *McFadden v. Lucas*, 713 F.2d 143 (5th Cir.), *cert. denied*, 464 U.S. 998, 104 S.Ct. 499 (1983); *Burnette v. Phelps*, 621 F.Supp. 1157 (M.D. La. 1985); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973).  The allegations regarding verbal abuse are therefore insufficient to support a constitutional violation.

Third, the failure to comply with a stated prison policy is not a *per se* violation of a clearly established constitutional right.  *Davis v. Sherer*, 468 U.S. 183, 193-95, 104 S.Ct. 3012, 3018-20 (1984); *Gagne v. City of Galveston*, 805 F.2d 558, 559-60 (5th Cir. 1986), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266 (1987).

---

[37] Record document number 12.

**RECOMMENDATION**

It is the recommendation of the magistrate judge that the defendants' Motion for Summary Judgment be granted in part, dismissing all claims against Dr. Tobe Momah and all claims against defendants Maj. Daniel Davis, Capt. John Sanders, and Sgt. Edward Mayhall except for the plaintiff's claims that: (1) Maj. Davis and Capt. Sanders were deliberately indifferent to his health when they sprayed him with a chemical agent after being informed that the plaintiff is asthmatic, in violation of his Eighth Amendment rights; and, (2) Maj. Davis, Capt. Sanders and Sgt. Mayhall subjected him to an excessive use of force, in violation of his Eighth Amendment rights.

Baton Rouge, Louisiana, April 15, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE